## Case No. 8,483.

### LONG v. SOULE et al.

[22 Int. Rev. Rec. 344; 9 Chi. Leg. News. 33; 1 Cin. Law Bul. 282.]

Circuit Court, W. D. Michigan. Sept. 1. 1876.

DEVISE TO TRUSTEES WITH POWER TO SELL—DEATH OF ONE—EXECUTION OF THE POWER—JURISDICTION OF EQUITY — WHEN EQUITY WILL COMPEL EXECUTION —POWER — PURCHASER MAY COMPEL EXECUTION.

1. A devised lands to four trustees "to sell and dispose of the same at private sale, on such terms as to them shall seem meet;" one of the trustees died, and another removed from the state; a sale of the land to B was negotiated by the other two, with the assent of the one who was absent; B paid the agreed consideration, and it was distributed, in accordance with the terms of the will, among the legatees; the two resident trustees made a conveyance of the lands to B, all of the parties concerned supposing at the time that such a conveyance was a valid execution of the power. The trustees were discharged by the order of the court, and B subsequently—the bill in this case praying a specific performance of the contract of sale by the heirs at law (who were also legatees under the will) and their grantees—*held*, that if the non-execution of a power by trustees is occasioned by a misapprehension of the law, ignorance of the law must have been the sole occasion of the mistake, in order to defeat the interference of a court of equity; and if the case involves other facts which present a case for relief, equity is vigilant to lay hold of them in order to protect rights.

2. When a power is coupled with a trust which imposes upon the trustee the duty of executing it, equity will compel its execution in performance of the trust, when its aid is invoked by a person standing in a meritorious relation to the power.

3. In this case, all of the trustees having, in legal effect, negotiated the contract of sale, the purchaser who has performed the contract on his part, is entitled to the aid of the court to compel its completion on the part of the others.

[This was a bill in equity by Arthur B. Long against Benjamin Soule, Andrew B. Robinson, and Isaac Errett, surviving executors and trustees, and Charles E. Soule and others.]

Vosper & Wilson, for complainant.

Mitchell & Pratt, and John C. Blanchard, for defendants.

WITHEY, District Judge. Ambrose L. Soule, died in June, 1857, leaving a will by which he devised to the three first named defendants and Richard L. Robinson, his lands in trust, with direction to sell and dispose of at such time, and on such terms, as to them should seem meet, to pay debts and legacies. Richard L. Robinson died in 1864, and the three surviving executors continued to act. In October, 1868, complainant, by his agent, William J. Long, entered into negotiations with two of the surviving executors, Benjamin Soule and Andrew B. Robinson, for the purchase of the lands to which this suit relates, and agreed upon terms, paid part of the price, and gave notes secured by mortgage for the balance. The other executor, Errett, had previously removed from Michigan to Ohio, but frequently visited Ionia county, his former place of residence; had knowledge of the proposed sale, and, prior to the final agreement, in a conference with his co-executors and trustees, urged and approved of a sale being made to Long at the market price, leaving the price to be fixed by his co-trustees. He was subsequently informed of the terms of sale agreed upon and approved thereof. The two executors, Soule and Robinson, executed deeds to Wm. J. Long, who paid them $8,000 down, and gave his note, secured by mortgage, for $15.957.60. Errett, being absent, did not join in the deeds. William J. Long afterward conveyed to his father, the complainant, for whom he had bought the land, and who furnished the money to make the payment. The debts having been paid, the executors paid the $8.000 over to the legatees, according to their distributive shares, and divided the notes in the same manner. Subsequently, the legatees having negotiated a sale of the notes and mortgage, the executors assigned and transferred them to Mr. Ledyard, who paid the legatees for the same. The heirs and legatees were of age when the lands were sold to Long, except two, there being six in all living; most of them were present at the arrangement for the sale. The two minors had a guardian. All, or nearly all of them, approved or assented in one form or another to the sale. Complainant went into possession of the land, built lumbering camps, roads, banking grounds, and cut five or more millions feet of logs. In 1873 he sold and conveyed by warranty 160 acres of the land, on which has been erected a saw mill. He has duly paid all taxes, and as the notes and mortgage for

the deferred payments came due, paid them with accrued interest. In 1874, the executors resigned, as such, and were discharged by the probate court of Ionia county. About the same time the circuit court of Ionia county, on their own petition, discharged them as trustees. Three of the legatees afterward conveyed their respective one-sixth interest in this land to defendants, Norris and Wood, without consideration. The power given by the testator being to the executors jointly could not be executed by part of them. On this ground, mainly, the heirs of Ambros L. Soule, who are the surviving legatees under his will, set up claim of ownership to the lands in controversy. Complainant has brought this suit to compel a specific performance of what he claims to have been an agreement of sale, making the three executors. the legatees, the guardian, and Norris and Wood, defendants. All the parties in interest are therefore before the court.

In addition to the facts already stated, it appears from the pleadings and proofs that the two executors. Soule and Robinson, had been most active in managing the trust estate; the other, Errett. states, and this is not denied, that his "part in the administration of the estate was largely that of counsel; the details of the business were done by the other two." He also testifies, "I strongly urged the sale of these lands." "I was more in favor of it than the other trustees. After I moved away I used to often visit back." "I was in favor of selling these lands at their market value. I always considered the sale a good one. It met my hearty approval. I was in favor of selling to Long because I knew he was perfectly responsible. The trustees had frequently talked together about selling this land, and we all preferred to sell to Long because we knew he was responsible. All the trustees, and I believe all the heirs, had a meeting before we put the lands in market, in which the whole matter was canvassed, and it was determined by all parties to sell them." "We all determined upon a sale of the land at the market value. I left the other two to fix the price, as I had no personal knowledge of the land, and they had. I not only frequently returned to Muir on business and visits, but was having correspondence back and forth, so that I was kept posted as to what was going on. The sale of that land to Long was as fair a transaction as ever took place in the world." "I should have signed the deeds most cheerfully if I had been there, as I heartily approved of the sale. and have always, and am now willing to do so." The undenied facts are that all the trustees agreed that it was advisable to sell the land to Long; the two who were present at the final arrangement fixed the price at ten dollars per acre, and this was a fair price; the other executor subsequently sanctioned the terms agreed

upon. The two executors present at the final arrangement represented to Long that they had been advised it was not necessary for the other executor to join in conveying, that they had sold and conveyed other lands without his joining, and that deeds executed by them would convey the legal title. Long never saw the will under which the executors were acting as trustees of the property, and took the representations of Soule and Robinson as to their authority to deed. He believed they could convey, they believed so, and it is admitted on all hands that the intention of all the trustees was to sell and convey to Long a perfect title. The parties acted upon that intention, and in pursuance of it: Long paying, and Soule and Robinson receiving $8,000 down of the purchase money, and notes secured by mortgage on the land for the deferred payments. Complainant went into possession, operated on the land for seven years without suspicion as to his title; paid the notes, and mortgage, and taxes annually. The legatees under the will received the entire proceeds of the sale. Soule and Robinson are pecuniarily irresponsible, and complainant cannot be restored to his former condition and rights.

The case presents, therefore, strong equities in favor of complainant, and we are brought to inquire, in view of the agreement to sell which we have stated, whether there is any rigorous rule of law that will prevent a court of equity granting the relief sought by this suit. It must be conceded that the deeds executed by the two trustees did not pass the legal title. The doctrine is that where two or more executors are vested with a power, they must all join in executing it, or if one is deceased, then the survivors, or such of them as have not effectually renounced the trust, must join in executing it. Perry, Trusts, §§ 493, 499, note 1; Id. 505. Defendants claim that the mistake and misapprehension which occurred is one of law and not of fact; that courts of equity never relieve against mistakes of law. They also claim that it is a case of the non-execution of a power by trustees. and not a defective execution thereof; that equity will not direct a power to be executed, though it will relieve against a defective execution. That the rule is as claimed in reference to a class of cases found in the books is not questioned; we do not doubt, on the other hand, but that the rule is stated too broadly on both points. If the non-execution of a power by trustees is occasioned by mistake or misapprehension of law, ignorance of the law must be the sole ground in order to defeat the interference of a court of equity; that is, if the case involves other elements of decision, equity is vigilant to lay hold of them to protect rights. The general rule undoubtedly is that relief sought upon the mere ground of ignorance or mistake of law, and in the absence of such special or peculiar circumstances as create exceptions,

will be refused. Hunt v. Rousmaier's Adm'r, 1 Pet. [26 U. S.] 15; Bank of U. S. v. Daniel, 12 Pet. [37 U. S.] 55; Wheeler v. Smith, 9 How. [50 U. S.] 81; Story, Eq. Jur. 116, 125, note 2; Id. 138, b, c, f. The truth is there ought to be no denial of relief from the application of any mere technical rule of law which would be a reproach to the law itself, and whenever technical rules of law are allowed to defeat the manifest justice and equity of a case, it will be found to rest upon policy and not principle.

Again, in a proper case, equity will enforce the execution of a power whether it be the case of a non-execution or a defective execution of the trustees' authority. If the execution of the power is left by the donor to the free will, and election of the donee whether to execute or not, courts will not compel the trustee to execute, but leave it where the donor left it, viz.: in the discretion of the donee, and will not overthrow the intention manifested by the party creating the power. Story, Eq. Jur. 170, 170a, and note 1, also section 169. But where the power is connected with a trust which imposes a duty on the trustee to execute the authority given to him, equity has always given effect to the power by compelling its execution in performance of the trust in favor of the persons standing in a meritorious relation to the power, such as creditors, purchasers, wife, and children. Also when the donee of the power has undertaken to execute it and by mistake does it imperfectly, equity will interpose to carry his very intention into effect in aid of creditors, purchasers, etc. Story, Eq. Jur., supra. It is said: "When there is a defect of substance in the execution of the power, such as the want of co-operation of all the proper parties in the act, then equity will not aid the defect." Story, Eq. Jur. 175. In a proper case this rule should be applied, as if two trustees without the concurrence of the third trustee should bargain and convey lands in execution of a power given to the three jointly, equity would not aid the defect, for if it should it would defeat the intention of the donor of the power.

The case we have to decide is quite outside of the rule last adverted to, because here Errett, the third trustee, not only urged the sale to Long, leaving the price to be fixed by his co-trustees, but after they had agreed upon terms of sale, sanctioned and ratified what they did. His subsequent ratification is in its legal effect, equivalent to his previous assent and co-operation.

Again, the authority given to the trustees to sell and dispose of the land, is not confined to the mere act of executing deeds of conveyance. On the contrary, making terms of sale with the purchaser, and accepting purchase money, are elements of a sale as essential as signing and acknowledging deeds. By those acts of the trustees, in which all three must be held to have co-operated in one way or another, contract obligations were raised which are binding upon them and those in privity, and operate as, so far a part execution of the power to sell, as that one standing in the meritorious relation to the power of purchaser, is entitled to invoke the aid of a court of equity to have the contract performed. The testator devised to the executors all his lands in certain localities, including those in controversy, and directed "them to sell and dispose of the same at private sale, upon such terms, and in such manner, and at such time or times as to them shall seem meet." They were thus vested with the title as trustees, with power to sell not only, but charged with the duty of executing the power of sale. If, now, they entered into an agreement, whether by parol or in writing, to sell these lands to Long, so that a contract obligation existed, they were bound by their agreement, as much as if, owning in their own right, they had made the precise arrangement shown by the facts of this case. This results from the fact that the power given to them was connected with a trust duty. So far as the heirs are concerned who are the legatees under the will, no fraud or injustice is done to them, if the sale is made effectual by conveyance. They get what the will provided they should have, viz., the proceeds of the sale. They are, therefore, without any equities whatever, touching these lands. As to complainant, it is manifest he cannot be restored to the situation he occupied when the contract was made, and whether there has been a defective execution or a non-execution of the power of sale, on the part of the trustees, he is entitled to the aid of the court and to the relief which he asks.

Inasmuch, however, as all the trustees operated in the act agreeing to sell, we think there was part execution of the authority to sell, and, therefore, a defective execution of the power in the omission to convey; but whether so or not, does not affect the result. Let a decree be entered in accordance with the rights of complainant as indicated by this opinion. The executors and trustees having resigned, and been discharged on their own petition, we suppose complainant will prefer, as he is entitled, to have the heirs decreed to convey.